# EXHIBIT B

3/19/2026 3:39 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 112641560
By: Monica Jackson
Filed: 3/19/2026 3:39 PM

CAUSE NO. _____

| | | |
|---|---|---|
| HARRIS COUNTY HOSPITAL DISTRICT D/B/A HARRIS HEALTH, | § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § | |
| vs. | § § | _____ JUDICIAL DISTRICT |
| WELLPOINT TEXAS, INC. F/K/A AMERIGROUP TEXAS, INC., INTEGRANET HEALTH, INC., and VAN LANG IPA, L.L.C., | § § § § § | |
| Defendants. | § | HARRIS COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

Plaintiff Harris County Hospital District d/b/a Harris Health ("Harris Health") files this Original Petition against Wellpoint Texas, Inc. f/k/a Amerigroup Texas, Inc. ("Amerigroup"), IntegraNet Health, Inc. ("IntegraNet"), and Van Lang IPA, L.L.C. ("Van Lang"; together with Amerigroup and IntegraNet, "Defendants") and hereby states and alleges the following:

## SUMMARY OF DISPUTE

Amerigroup and its delegatees IntegraNet and Van Lang owe Harris Health millions of dollars for hospital care and other medical services that Harris Health provided to thousands of patients insured by Amerigroup's Medicare Advantage health plans. But the insurance company and its delegatees refuse to pay, so Harris Health files this lawsuit to hold them to their obligations.

Harris Health is the public safety-net health system for Harris County, Texas. Every year, Harris Health provides over half a billion dollars in charity care to hundreds of thousands of indigent and uninsured Harris County residents. Because Harris Health serves all patients regardless of their ability to pay, it must fund a large portion of its operations through taxes paid by the residents of Harris County.

- 1 -

Amerigroup is a for-profit corporation owned by the publicly traded company Elevance Health. Amerigroup sells health insurance plans to residents of Texas and Harris County, including Medicare Advantage plans. Under Medicare Advantage, Amerigroup collects fixed payments from the federal government for each member it enrolls; in exchange, Amerigroup is obligated to coordinate and pay for those members' covered medical care. In carrying out these obligations, Amerigroup purports to have delegated certain functions to IntegraNet and Van Lang, but Amerigroup remains responsible for administering its Medicare Advantage plans.

In 2004, Harris Health entered into a Participating Provider Agreement with Amerigroup, under which Amerigroup's members could receive "in-network" medical care from Harris Health in exchange for Amerigroup's payment of agreed-upon rates. Starting in 2020, Harris Health raised issues with Amerigroup regarding a pattern of delayed and underpaid claims. In mid-2021, shortly after Harris Health escalated Amerigroup's failure to make contractually required payments, Amerigroup attempted to unilaterally "amend" the parties' agreement by replacing it with an entirely new contract. When Harris Health objected to this purported "amendment," Amerigroup asserted that the parties' contract would be terminated as of March 19, 2022.

Even after Amerigroup's made-up termination date, members of Amerigroup's Medicare Advantage plans continued to present to Harris Health facilities for emergency care and other treatment. And Amerigroup never made sufficient arrangements for those members to be treated elsewhere. Following the course of performance that the parties had established, Harris Health provided notice or sought preauthorization as applicable, treated the patients, and timely billed Amerigroup for the services. Yet Amerigroup continued to refuse to pay or underpay for the medical services Harris Health provided to Amerigroup's members.

- 2 -

In effect, Amerigroup is pocketing the federal funds it receives for enrolling Medicare Advantage beneficiaries while shifting the cost of providing their medical care to Harris Health and, ultimately, the residents and taxpayers of Harris County.

Harris Health has made significant efforts to resolve this dispute, including by entering into a tolling agreement for many of the underpayments at issue. But Amerigroup has continued to refuse to pay the money it owes, forcing Harris Health to file this suit.

## I.
## DISCOVERY LEVEL AND RELIEF SOUGHT

1.     Harris Health intends to conduct discovery under Level 3 of Rule 190.3 of the Texas Rules of Civil Procedure.

2.     By this suit, Harris Health seeks monetary relief over $1,000,000.

## II.
## PARTIES

3.     Harris Health is a political subdivision of the State of Texas created pursuant to the Texas Constitution, Article IX, Section 4. Harris Health's principal office is in Harris County, Texas.

4.     Amerigroup is a Texas corporation with its principal office at 2505 N Hwy 360, Suite 300, Grand Prairie, Texas 75050. Amerigroup may be served with citation in this action through its registered agent in the State of Texas: Steven K. Solstad, 8690 Virginia Pkwy, Apt. 125, McKinney, Texas 75071.

5.     IntegraNet is a Texas corporation with its principal office at 2900 North Loop West, Suite 700, Houston, Texas 77092. IntegraNet may be served with citation in this action through its registered agent in the State of Texas: Lawrence J. Wedekind, 2900 North Loop West, Suite 700, Houston, Texas 77092.

6. Van Lang is a Texas limited liability company with its principal office at 8278 Bellaire Blvd. Ste. B, Houston, Texas 77036. Van Lang may be served with citation in this action through its registered agent in the State of Texas: Dac Vu, 8278 Bellaire Blvd. Ste. A, Houston, Texas 77036.

## III.
## JURISDICTION AND VENUE

7. Jurisdiction is proper in this Court pursuant to the relevant portions of the Texas Constitution, the Texas Government Code, and other relevant law. This Court has jurisdiction over the subject matter of the claims in this lawsuit, and the amount in controversy is in excess of the minimum jurisdictional limits of the Court.

8. This Court has personal jurisdiction over Defendants because Defendants are Texas entities with their principal places of business in Texas and because Harris Health's claims arise out of Defendants' contacts and conduct in Texas, including their express and implied agreement to pay for health care services provided by Harris Health in Texas and their provision and administration of health insurance coverage to individuals in Texas.

9. Venue in Harris County is proper under section 15.002(a) of the Texas Civil Practice & Remedies Code because all or a substantial part of the events giving rise to this lawsuit occurred in Harris County and because the principal office of one or more Defendants is in Harris County.

## IV.
## FACTS

A.     Harris Health's Agreement with Amerigroup

10. Harris Health is the largest safety-net health system in Texas. It is responsible for providing medical and hospital care to all residents of Harris County, with a focus on the indigent and uninsured. Harris Health operates two full-service hospitals—Ben Taub and Lyndon B.

Johnson—as well as multiple community health centers, same-day clinics, specialty clinics, and other programs. It treats over a million patients each year; over 40% of them are uninsured. Although Harris Health collects reimbursements for medical services provided to insured patients, the majority of its funding is derived from taxes assessed against Harris County residents and supplemental payment programs administered by the State of Texas.

11.     Amerigroup is a managed care organization licensed by the Texas Department of Insurance. Amerigroup offers a variety of health plans to Texas residents, including Medicare Advantage plans. Medicare Advantage is an alternative to traditional Medicare that allows Medicare beneficiaries to obtain coverage through private insurance companies—like Amerigroup—known as Medicare Advantage Organizations. The federal government pays Medicare Advantage Organizations fixed payments per month based on the number of enrollees. In exchange for these fixed payments, the Medicare Advantage Organization assumes the full obligation and financial risk for the provision of covered health care services for its members, regardless of the type, frequency, or cost of services required for their care.

12.     In 2004, Harris Health and Amerigroup entered into a Participating Provider Agreement (as amended from time to time, the "Agreement").[1] The Agreement required Harris Health to provide covered health care services to Amerigroup members. In exchange, Amerigroup agreed to timely pay agreed-upon rates for claims submitted by Harris Health, and to pay interest for late-paid claims. Among other things, the Agreement also prohibited Amerigroup from engaging in any retaliatory action in response to a complaint or appeal by Harris Health; required Amerigroup to provide certain payment information to Harris Health upon request; and required

---

[1] Due to confidentiality, this Petition describes the Agreement generally but does not provide its specific terms.

Amerigroup to comply with all state, federal, and local statutes, regulations, and other requirements applicable to the Agreement.

13. Amerigroup purports to have delegated certain functions related to its Medicare Advantage plans to third parties known as delegated risk entities or delegatees, including IntegraNet and Van Lang (together, "Delegatees"). Under governing law, Amerigroup—as the Medicare Advantage Organization contracted with the federal government—retains the ultimate legal responsibility for administering its Medicare Advantage plans, including delegated plans and the conduct of its Delegatees. Accordingly, references to the acts and omissions of Amerigroup in this Petition include the acts and omissions of IntegraNet and Van Lang.

**B.     Amerigroup's Systematic Nonpayment and Underpayment Under the Agreement**

14. Starting in 2020, Harris Health alerted Amerigroup to a pattern of improper delayed payments, underpayments, and refusals to pay for necessary, covered medical services that Harris Health provided to Amerigroup members under the Agreement. These improper payments fell into multiple categories, including Amerigroup's failure to properly pay for laboratory services, its failure to properly pay for emergency care, and its failure to make certain payments in connection with inpatient claims (known as "DSH payments") that Harris Health was entitled to under the Agreement because it provides a disproportionately high share of uncompensated care to low-income and uninsured patients.

15. Harris Health repeatedly raised these payment issues with Amerigroup's provider liaison, but Amerigroup refused to remedy the issues and properly pay the claims.

**C.     Amerigroup's Retaliatory "Amendment" and Purported Termination of the Agreement**

16. In mid-2021, Harris Health escalated these payment disputes within Amerigroup, showing that Amerigroup breached the Agreement's terms through its pattern of underpayment

and improper denial of claims. Instead of addressing its failure to pay Harris Health as required by the Agreement, Amerigroup responded by sending Harris Health notice of its intent to replace the parties' Agreement with an entirely new contract that would support Amerigroup's position of non-payment. Although the Agreement allowed Amerigroup to implement certain amendments upon written notice to Harris Health—which Harris Health could reject by terminating the Agreement—Amerigroup instead purported to entirely "replace" the Agreement with a wholly "new agreement." The new agreement contained numerous material changes of the parties' relationship in favor of Amerigroup, including requiring Harris Health to comply with new policies, programs, and procedures, and requiring Harris Health to give up its right to access the courts to resolve disputes.

17.     Harris Health challenged the purported amendment as improper and legally ineffective under the Agreement. It further advised that, in the unlikely event that the purported amendment was deemed effective, Harris Health would invoke its right to terminate the Agreement, as of December 31, 2022. Ignoring Harris Health's challenge to the purported amendment, the contingent nature of Harris Health's notice of termination, and the effective date of Harris Health's contingent termination, Amerigroup responded that it "accept[ed]" Harris Health's termination, but it asserted that the date of termination "shall be March 19, 2022."

**D.     Amerigroup's Ongoing Failure to Properly Reimburse Harris Health**

18.     Even after the purported termination of the Agreement, Amerigroup's Medicare Advantage members continued to present to Harris Health's hospitals and other facilities for treatment, and Harris Health continued to provide them reasonable and necessary medical care. For each patient, Harris Health would confirm the patient was covered by an Amerigroup Medicare Advantage plan and provide notice to Amerigroup or request preauthorization for the proposed treatment, as applicable. After providing treatment, Harris Health would submit complete, clean

claims for payment in accordance with all applicable claim submission policies and procedures. For Amerigroup's delegated Medicare Advantage plans, Harris Health would follow this process with IntegraNet or Van Lang, as applicable. Amerigroup (and its Delegatees) also continued to reimburse Harris Health for health care services provided to its members, paying thousands of Harris Health's claims for reimbursement since the purported termination date. Notably, Amerigroup paid DSH payments to Harris Health during this time period, effectively conceding that Harris Health is entitled to DSH payments in connection with its claims for inpatient hospital services.

19.     Despite this established course of dealing between the parties, Amerigroup (and its Delegatees) also continued to improperly delay payment, underpay, and refuse to pay the amounts it owed to Harris Health for many claims for reasonable and necessary medical services rendered to Amerigroup members.

**E.     The Parties' Failed Attempt to Resolve their Dispute**

20.     Amerigroup's improper underpayments and nonpayments to Harris Health now involve thousands of claims[2] and millions of dollars.

21.     Harris Health has consistently and repeatedly attempted to resolve these payment disputes with Amerigroup. Both before and after the purported termination by Amerigroup of the Agreement, Harris Health has followed Amerigroup's (or its Delegatees') appeal processes for all disputed claims and engaged in further administrative processes with the federal Centers for Medicare & Medicaid Services. Harris Health has also attempted to escalate these payment disputes to Amerigroup decisionmakers. In February 2023, Harris Health and Amerigroup (on behalf of itself and its Delegatees) entered into a Tolling Agreement to toll the statute of limitations

---

[2] Due to confidentiality, patient information and specific claim details are not provided in this Petition.

and other timing and presentation defenses for any claims arising out of, relating to, or in any way connected with the disputed claims identified at that time.

22.     But all of Harris Health's efforts have been to no avail. Amerigroup has continued to refuse to make full payment for the health care services that Harris Health provided to thousands of Amerigroup's members. Amerigroup also refused to provide payment-related information that Harris Health repeatedly requested, despite Harris Health's entitlement to that information under the Agreement and governing law.

23.     Amerigroup's improper conduct and this dispute do not, however, adversely affect the Medicare Advantage enrollees whose care gives rise to these payment disputes. Because these disputes arise from medical services that have already been provided, they do not put any patients at risk of being denied medical care. Moreover, both the Agreement and governing law limit the ability of Harris Health or Amerigroup to seek additional payment from the enrollees at issue, and Harris Health has waived and affirmatively disclaims any right to do so. Indeed, Harris Health is only seeking to be paid by Amerigroup—the party that has received federal funds meant to pay for the medical care that Harris Health provided to its Medicare Advantage plan members.

**V.**
**CAUSES OF ACTION**

**A.     Breach of Contract (Against Amerigroup)**

24.     All other paragraphs are incorporated herein as if fully set forth.

25.     The Agreement was a valid, enforceable contract between Harris Health and Amerigroup.

26.     Harris Health performed, tendered performance of, or was excused from performing its contractual obligations under the Agreement. For all the claims at issue, Harris Health provided reasonable and necessary medical care to Amerigroup members that constituted

covered services under the Agreement. Harris Health timely submitted complete, clean claims to Amerigroup according to all applicable policies and procedures. Harris Health also pursued all applicable appeal processes and procedures with Amerigroup.

27.     Amerigroup breached the Agreement, including without limitation by:

(a)     Improperly delaying payment, denying payment, underpaying, and failing to pay required interest on Harris Health's claims;

(b)     Refusing to provide payment-related information that Harris Health requested;

(c)     Improperly retaliating against Harris Health for engaging in conduct protected by the Agreement. Under the Agreement and governing law, Amerigroup was prohibited from engaging in any retaliatory action—including termination or nonrenewal of the Agreement—in response to Harris Health's complaint or appeal on behalf of itself or Amerigroup's members. After Harris Health raised formal disputes about Amerigroup's improper payment decisions, acting both on its own behalf and on behalf of its patients, Amerigroup responded by purporting to implement an "amendment" that would replace the Agreement with a wholly new contract that would materially disadvantage Harris Health. When Harris Health challenged this improper action, Amerigroup stated that the Agreement would be deemed terminated on March 19, 2022. Amerigroup's purported amendment and termination were adverse actions against Harris Health that, upon information and belief, Amerigroup would not have taken at that time if not for Harris Health's protected conduct; and

(d)     Purporting to terminate the Agreement without a proper basis or sufficient notice.

28.     Amerigroup's breaches caused Harris Health injury and damages.

**B.     Breach of Implied Contract (Against All Defendants)**

29.     All other paragraphs are incorporated herein as if fully set forth.

30.     Even after the purported termination of the Agreement, Amerigroup's Medicare Advantage plan members continued to present to Harris Health facilities, and Harris Health continued to provide them with reasonable and necessary medical care, including emergency care, inpatient hospital care, laboratory services, and other health care services. For all the claims at issue, Harris Health confirmed the patient was covered by an Amerigroup Medicare Advantage plan and provided notice to Amerigroup or requested preauthorization for the proposed treatment, as applicable. Harris Health also submitted complete, clean claims to Amerigroup and pursued all applicable appeal processes and procedures with Amerigroup. For Amerigroup's delegated Medicare Advantage plans, Harris Health would follow this process with IntegraNet or Van Lang, as applicable.

31.     Amerigroup and its Delegatees knew that Harris Health was providing medical services to Amerigroup's members after the purported termination date, and that Harris Health expected payment for those services. Amerigroup and its Delegatees accepted the benefit of those services by, among other things, continuing to process preauthorization requests, accepting claims submissions from Harris Health, and paying some (but not all) claims at rates consistent with the parties' prior Agreement and governing law. Amerigroup further accepted the benefit of those services by collecting fixed payments from the federal government for the very members whose care Harris Health was providing.

32.     As demonstrated and inferred by this course of conduct, Harris Health and Defendants had a mutual agreement and implied contract for Amerigroup's payment, either

- 11 -

directly or through its Delegatees, for Harris Health's medical care to Amerigroup's Medicare Advantage plan members at rates consistent with the parties' prior Agreement and governing law.

33.    Harris Health fully performed its obligations under the implied contract for all the claims at issue by providing reasonable and necessary medical care to Amerigroup's Medicare Advantage members; providing notice or requesting preauthorization, as applicable; submitting complete, clean claims; and pursuing all applicable appeal processes and procedures.

34.    Defendants breached the implied contract, including without limitation by improperly delaying payment, denying payment, and underpaying claims for the reasonable and necessary medical services that Harris Health provided to Amerigroup's Medicare Advantage plan members.

35.    Defendants' breaches of the implied contract caused Harris Health injury and damages.

## C.    Promissory Estoppel (Against All Defendants)

36.    All other paragraphs are incorporated herein as if fully set forth.

37.    Through the parties' course of dealing after the purported termination of the Agreement, Defendants made a clear and definite promise to Harris Health that they would continue to pay for medical care rendered to Amerigroup's Medicare Advantage plan members. This promise was manifested through Defendants' repeated pattern of conduct in accepting notifications and requests for preauthorization, authorizing treatment, receiving and processing claims, and issuing payments to Harris Health.

38.    Defendants knew or reasonably should have known that Harris Health would rely on this promise in continuing to provide medical care to Amerigroup's members.

39.    Harris Health reasonably and justifiably relied on Defendants' promise to its detriment by continuing to provide notification or seek preauthorization as applicable, rendering

reasonable and necessary medical care to Amerigroup's members, and timely submitting claims that have not been timely paid in full. In doing so, Harris Health incurred substantial costs and expended significant resources in delivering care to Amerigroup's members.

40.     Injustice can be avoided only by enforcing Defendants' promise to Harris Health.

**D.     Negligent Misrepresentation (Against All Defendants)**

41.     All other paragraphs are incorporated herein as if fully set forth.

42.     As is customary in the health care industry, in connection with the claims at issue Harris Health contacted Amerigroup to confirm that patients were covered by an Amerigroup Medicare Advantage plan, to provide notice to Amerigroup or request preauthorization for the proposed treatment, as applicable, and to submit claims for payment and other information. For Amerigroup's delegated Medicare Advantage plans, Harris Health would follow this process with IntegraNet or Van Lang, as applicable.

43.     Defendants owed duties to Harris Health in connection with Harris Health's provision of medical care to Amerigroup members, including without limitation to reasonably investigate and disclose the existence and extent of coverage for its insureds, to provide accurate and complete information about Amerigroup's insureds' eligibility and available benefits, to disclose limitations or exclusions, and to provide timely and complete responses to notices, requests for preauthorization, claim submissions, and other inquiries.

44.     In connection with the claims at issue, Defendants made false representations, failed to disclose material information, and/or failed to provide timely and complete responses regarding payment for medical care provided by Harris Health to Amerigroup's members. Defendants knew or reasonably should have known that their representations were false or incomplete.

- 13 -

45.     Harris Health reasonably and justifiably relied on these misrepresentations and omissions, which caused Harris Health pecuniary loss.

**E.      Unjust Enrichment (Against All Defendants)**

46.     All other paragraphs are incorporated herein as if fully set forth.

47.     In the alternative to its contract claims, and to the extent no express or implied contract governs the parties' dispute, Harris Health asserts a claim for unjust enrichment against Defendants.

48.     Harris Health provided valuable medical services to Amerigroup's Medicare Advantage members, both during and after the term of the Agreement. These services included emergency care, inpatient and outpatient hospital services, and other medically necessary treatment rendered at Harris Health's hospitals, clinics, and other health care facilities.

49.     Defendants received and accepted the benefits of these services. Among other things, Amerigroup collected fixed per-member payments from the federal government for the very members whose care Harris Health was providing—payments that were intended to fund the cost of those members' medical services; and the Delegatees received payments from Amerigroup for those same members.

50.     Defendants obtained these benefits through undue advantage and improper means. Defendants were aware that Harris Health continued to provide medical care to Amerigroup's Medicare Advantage plan members, and that Harris Health expected to be compensated for doing so. Defendants continued to process notices and preauthorization requests, accept claim submissions from Harris Health, and pay some (but not all) claims. Yet for many claims, Defendants have unjustifiably delayed payment, refused to pay, or underpaid Harris Health, causing Harris Health injury and damages.

51.     Under these circumstances, it would be unconscionable for Defendants to retain the benefit of Harris Health's medical care to Amerigroup's Medicare Advantage plan members—and the federal funds meant to pay for those members' care—without compensating Harris Health for the medical services it provided.

**VI.**
**ATTORNEYS' FEES**

52.     All preceding paragraphs are incorporated herein as if fully set forth.

53.     Amerigroup's conduct made it necessary for Harris Health to employ the undersigned counsel to enforce Harris Health's rights under the Agreement and file suit and seek damages as set forth above. Harris Health timely presented its claims to Amerigroup, but Amerigroup has refused to resolve them despite knowing that Harris Health's claims are valid. Under these circumstances, Harris Health is entitled to recover its reasonable and necessary attorneys' fees incurred in this dispute from Amerigroup, including pursuant to Texas Civil Practice and Remedies Code Chapter 38.

**VII.**
**CONDITIONS PRECEDENT**

54.     All conditions precedent have occurred, have been performed, or are waived.

**VIII.**
**JURY DEMAND**

55.     Harris Health hereby demands a jury and has submitted the applicable fee.

## IX.
## PRAYER FOR RELIEF

WHEREFORE, Harris Health respectfully requests that the Court enter judgment against Defendants for the following relief:

(a)     An award of actual damages in an amount to be decided at trial;

(b)     Pre- and post-judgment interest as allowed by law, reasonable attorneys' fees, and costs of Court;

(c)     Such other and further relief as this Court deems just and proper.

Respectfully submitted,

**JACKSON WALKER LLP**

By:     */s/ Joel R. Glover*

Joel R. Glover
  State Bar No. 24087593
  jglover@jw.com
Shannon M. Wright
  State Bar No. 24131783
  swright@jw.com
1401 McKinney St., Suite 1900
Houston, Texas 77010
(713) 752-4200
(713) 752-4221 (fax)

Stephen Calhoun
  State Bar No. 24069457
  scalhoun@jw.com
1900 Broadway St., Suite 1200
San Antonio, TX 78215
(210) 978-7713
(210) 242-4667 (fax)

*Attorneys for Plaintiff Harris County Hospital District d/b/a Harris Health*

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Amy Malone on behalf of Joel Glover
Bar No. 24087593
amalone@jw.com
Envelope ID: 112641560
Filing Code Description: Petition
Filing Description: Plaintiff's Original Petition
Status as of 3/19/2026 3:44 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Joel Glover | | jglover@jw.com | 3/19/2026 3:39:40 PM | SENT |
| Stephen Calhoun | | scalhoun@jw.com | 3/19/2026 3:39:40 PM | SENT |
| Shannon Wright | | swright@jw.com | 3/19/2026 3:39:40 PM | SENT |
| Amy Malone | | amalone@jw.com | 3/19/2026 3:39:40 PM | SENT |
| Melanie McClenathen | | mmcclenathen@jw.com | 3/19/2026 3:39:40 PM | SENT |
| Celia Morales | | cmorales@jw.com | 3/19/2026 3:39:40 PM | SENT |